STATE of Wisconsin, Plaintiff-Appellant,

v.

Terri WILLIQUETTE, Defendant-Respondent.†

Court of Appeals

No. 84–2046–CR. Submitted on briefs March 25, 1985.—
Decided May 21, 1985.
(Also reported in 370 N.W.2d 282.)

† Petition to review granted.

For the appellant there were briefs by *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

For the respondent there was a brief by *Thomas S. Reynolds,* of Sturgeon Bay.

Before Cane, P.J., Dean and LaRocque, JJ.

CANE, P.J. The state appeals an order dismissing a criminal information against Terri Williquette. The state accused Williquette of abusing her children, in violation of sec. 940.201, Stats. The state alleges that Williquette intentionally failed to protect her children from abuse inflicted by her husband, who is the father of the children. The circuit court concluded that sec. 940.201 does not impose criminal liability on parents who fail to protect their children from abuse. The state contends that Williquette directly committed child abuse because her failure to act exposed the children to abuse. Although we conclude that a parent's failure to protect her children is not a direct act of abuse, probable cause exists to believe Williquette aided and abetted the abuse. We therefore reverse the order dismissing the information.

## DIRECT CRIME

Section 940.201 prohibits persons from torturing children or subjecting them to cruel maltreatment. The state

interprets the statutory phrase "subjects to cruel maltreatment" to prohibit persons from permitting cruel maltreatment, regardless whether they directly inflict such maltreatment. The state relies on the concurring opinion in *State v. Campbell*, 102 Wis. 2d 243, 255, 306 N.W.2d 272, 278 (Ct. App. 1981) (Gartzke, P.J., concurring), which defined "subjects" as meaning to expose a child to cruel maltreatment. The state also notes that Maryland considers a parent's failure to protect to be direct child abuse under a statute similar to Wisconsin's. *Pope v. State*, 396 A.2d 1054, 1066–67 (Md. 1979).

The state reads too much into the use of the verb "subjects" in sec. 940.201. Interpreting the statute as the state urges, a person would not be liable for permitting torture to a child because "subjects" is not used in conjunction with the prohibition against torture. No logic justifies differentiating between the bases of liability for torture and cruel maltreatment.

The concurrence in *Campbell* also does not recognize such a distinction. In *Campbell*, the defendant threw a child against a wall. The issue was whether the defendant's conduct subjected the child to cruel maltreatment if no injuries resulted. The concurrence concluded that the conduct did subject the child to cruel maltreatment because it exposed him to possible harm. We construe the concurrence to require the defendant to directly commit the act that exposed the child to harm, as was the case in *Campbell*.

[1]

The *Pope* decision does not change our conclusion. In *Pope*, the Maryland Court of Appeals stated that the failure to prevent acts of abuse over a protracted period could be considered a cause of injuries and that the omission constituted direct abuse. *Id.* at 1066–67. We refuse to adopt the *Pope* reasoning because we do not consider the failure to intervene to be an essential ele-

ment of child abuse. A person performs an essential element of a crime when he commits the ultimate act prohibited by the statute. *Cf. State v. Marshall,* 92 Wis. 2d 101, 122, 284 N.W.2d 592, 601 (1979) (a person who fires a gun directly commits murder; a person who brings a murderer and a victim together is guilty of aiding and abetting). Torturing or cruelly maltreating a child is the ultimate act prohibited by sec. 940.201. By itself, the failure to protect is not torture or cruel maltreatment. A person who fails to protect, therefore, does not directly commit child abuse.

## AIDING AND ABETTING

We next consider whether a parent's failure to protect a child from abuse may constitute aiding and abetting. Although the information does not specifically allege aiding and abetting, dismissal is not required unless the defect will adversely affect Williquette's trial preparation. *Bethards v. State,* 45 Wis. 2d 606, 618, 173 N.W.2d 634, 641 (1970). Because the information informs Williquette of the state's theory of liability and the facts in support of its theory, the failure to allege aiding and abetting does not warrant dismissal.

The elements of aiding and abetting are: (1) The defendant undertook conduct that as a matter of objective fact aided another in the execution of a crime; and (2) the defendant consciously desired or intended that his conduct would yield such assistance. *State v. Hecht,* 116 Wis. 2d 605, 619–20, 342 N.W.2d 721, 729 (1984). To allow the charges in this case to go to trial on an aiding and abetting theory, Williquette's failure to act must constitute an omission that satisfies the requirement of conduct objectively aiding the execution of a crime. We also must be able to infer that she intended to aid the commission of the crime by her omission.

Although the standard definition of aiding and abetting requires conduct that is either verbal or overt, *see Hawpetoss v. State,* 52 Wis. 2d 71, 78, 187 N.W.2d 823, 826 (1971), we conclude that an omission also may aid the execution of a crime. This conclusion is consistent with the fact that an omission may constitute the direct commission of a crime. *See State v. Repp,* 117 Wis. 2d 143, 147–48, 342 N.W.2d 771, 773 (Ct. App. 1983). To constitute aiding and abetting, the commission of a crime must be the natural and probable consequence of the defendant's conduct. *See State v. Stanfield,* 105 Wis. 2d 553, 563, 314 N.W.2d 339, 344 (1982). There is no inherent reason why a crime may not be the natural and probable consequence of a failure to act.

An omission may constitute aiding and abetting only if the defendant had a legal duty to act. *See* LaFave and Scott, *Criminal Law,* § 26 at 182 (West 1972). No duty generally exists to protect others from hazardous situations. *DeBauch v. Knott,* 69 Wis. 2d 119, 122–23, 230 N.W.2d 158, 160–61 (1975). When a special relationship exists between the parties, however, social policy may impose a duty to rescue. *Lloyd v. S.S. Kresge, Co.,* 85 Wis. 2d 296, 303, 270 N.W.2d 423, 426 (Ct. App. 1978). Because a parent has a legal duty to protect a child, *see Cole v. Sears Roebuck & Co.,* 47 Wis. 2d 629, 634, 177 N.W.2d 866, 869 (1970), breach of this duty may give rise to criminal liability. *See State v. Walden,* 293 S.E.2d 780, 785 (N.C. 1982).

Finally, we consider whether a parent's intentional failure to protect a child permits an inference of an intent to assist the perpetrator of child abuse.[1] Al-

[1] We note that the same intent required for conviction as a direct perpetrator of a crime is not required for conviction as an aider and abettor. *State v. Sharlow,* 110 Wis. 2d 226, 238–39, 327

though Williquette was not present when her husband abused their children, the principles applicable to a "mere presence" case provide a useful starting point for our analysis. Mere presence and ambivalent conduct at the scene of a crime is insufficient to charge a crime. *State v. Haugen,* 52 Wis. 2d 791, 795–96, 191 N.W.2d 12, 15 (1971). The evidence may be sufficient, however, if it creates an inference that the defendant knew a crime had been committed. *Id.* at 795–96, 191 N.W.2d at 14–15.

Here, Williquette allegedly knew her husband repeatedly abused their children, yet she did nothing to prevent future occurrences. If she had been present at the time of the abuse, therefore, the state could prosecute her for aiding and abetting. Her knowing failure to intervene would reasonably indicate an intent to assist the perpetrator. Similarly, Williquette allowed the abuse to continue when she failed to intervene, despite knowledge of a pattern of abuse in her absence. Inaction in this situation supports an inference of an intent to assist the crime. Although other reasonable inferences also may be drawn, choosing between conflicting inferences is a matter for the trier of fact. *State v. Dunn,* 121 Wis. 2d 389, 398, 359 N.W.2d 151, 155 (1984).

*By the Court.*—Order reversed and cause remanded.

N.W.2d 692, 698 (1983). Because Williquette cannot be prosecuted as the direct perpetrator of child abuse, we do not decide whether that crime requires specific or general intent.