Clifford ZELCO, Plaintiff,

v.

INTEGRITY MUTUAL INSURANCE CO. and Dean Hitsman,
Defendants-Appellants,†

SHEBOYGAN FALLS MUTUAL INSURANCE COMPANY and
Ann Norenberg, Defendants-Respondents,

SHEBOYGAN MEMORIAL MEDICAL CENTER, Defendant,

INTEGRITY MUTUAL INSURANCE CO., Third Party Plain-
tiff-Appellant,†

v.

Kenneth NORENBERG, Third Party Defendant,

Bonnie NORENBERG, Third Party Defendant-
Respondent.

Court of Appeals

*No. 93–3378. Submitted on briefs September 1,
1994.—Decided December 6, 1994.*

(Also reported in 527 N.W.2d 357.)

†Petition to review filed.

For the defendants-appellants and third party plaintiff-appellant the cause was submitted on the briefs of *James C. Ratzel* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

For the defendants-respondents and third party defendant-respondent the cause was submitted on the briefs of *James O. Conway* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

WEDEMEYER, P.J.   Dean Hitsman and his insurer, Integrity Mutual Insurance Co. (Hitsman) appeal from an order: (1) dismissing their cross-claim against Ann Norenberg and her insurer, Sheboygan Falls Mutual Insurance Company; and (2) dismissing their third-party claim against Kenneth[1] and Bonnie Norenberg (Ann's parents). The issues on appeal are: (1) whether any legal duty exists from a social host to a guest who is injured during his or her intentional confrontation with another guest; and (2) whether the parents of a minor social host owe any legal duty to a guest who is injured in their home by another guest because of their obligation to control their child. On summary judgment, the trial court found that no legal

---

[1] Kenneth Norenberg was initially named as a third party defendant; however, the written order granting summary judgment to the Norenbergs does not specifically include Kenneth by name. Although the record is silent as to why Kenneth is not specifically referenced, the record indicates that Kenneth is deceased. Moreover, the transcript from the summary judgment hearing clearly indicates the trial court dismissed any claim against *all* the Norenbergs. Therefore, this opinion disposes of any issues raised in relation to both Bonnie *and* Kenneth.

duty exists. Because we conclude that a social host's duty to exercise ordinary care does not impose on a social host the duty to protect one guest from the conduct of another guest, and because Hitsman cannot state a claim for negligent parental control, we affirm.

## I. BACKGROUND

On October 27, 1989, Ann Norenberg hosted a party at the Norenberg home where she resided with her parents. Ann was seventeen-years-old and her parents were out-of-town. Guests were to bring their own beverages for consumption. Clifford Zelco, age twenty-two, and Dean Hitsman, age eighteen, were not invited guests, but were allowed into the Norenberg home. Both men admit that during the party they consumed only beer that they had purchased on their own and brought with them to the party. Both men admit that Ann did not provide them with any alcohol. At one point, Hitsman was asked to leave because of his conduct. Hitsman left, but returned a short time later and forced himself into the home. Ann again told Hitsman to leave and went upstairs into a bedroom. Hitsman followed her upstairs. Zelco followed Hitsman upstairs. Zelco "bear hugged" Hitsman. When Zelco released Hitsman, Zelco lost his balance. Before falling, Zelco reached out to grab something and ended up grabbing Hitsman. As a result, both men fell down the stairs together.

Zelco was injured and filed a lawsuit against Hitsman and Ann Norenberg. He alleged that Ann was negligent. Hitsman's insurer filed a cross-claim against Ann and filed a third-party action against Ann's parents. The trial court granted the Norenbergs' motion for summary judgment. Hitsman now appeals.

## II. DISCUSSION

■

In reviewing a summary judgment decision, we apply the standards set forth in § 802.08(2), STATS., in the same manner as the trial court. *County of Dane v. Norman*, 174 Wis. 2d 683, 686, 497 N.W.2d 714, 715 (1993) (citation omitted). Since that methodology has been set forth in numerous other decisions, we do not repeat it here. *See, e.g., Grams v. Boss*, 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476 (1980).

*A. Negligence claim against Ann Norenberg.*

Hitsman claims that Ann, as a social host, owed a duty to her guests to exercise ordinary care and, therefore, had a duty to protect Zelco who was injured when he intentionally confronted Hitsman. Ann claims that a social host does not owe any duty to protect one guest from another, absent a special relationship. The trial court held that since no special relationship exists between a social host and his or her guests, no legal duty exists. We agree with the trial court.

Although "[t]he duty toward all persons who come upon property with consent of the occupier will be that of ordinary care," *Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 857, 236 N.W.2d 1, 11 (1975), this duty does not necessarily include a duty to protect one guest who voluntarily confronts another guest.

In this case, Ann had a duty to exercise ordinary care toward the individuals who came into her home with her consent; however, Ann did not have a duty to protect Zelco from injuries he suffered when he voluntarily confronted Hitsman. We base our conclusion on two factors: (1) " 'A defendant's duty is established

when it can be said that it was foreseeable that his act or omission to act may cause harm to someone.' " *Lloyd v. S.S. Kresge Co.*, 85 Wis. 2d 296, 305, 270 N.W.2d 423, 427 (Ct. App. 1978); and (2) "Wisconsin does not generally impose a duty upon persons to protect others from hazardous situations." *Erickson v. Prudential Ins. Co.*, 166 Wis. 2d 82, 88, 479 N.W.2d 552, 554 (Ct. App. 1991).

First, Ann's duty is not established in this case because Zelco's injuries were not foreseeable. Unbeknownst to Ann, Zelco chose to confront Hitsman on his own volition. Second, a duty to protect or aid someone from another's conduct is only imposed in situations where a special relationship exists. *See Lloyd*, 85 Wis. 2d at 302-04, 270 N.W.2d at 426-28. Wisconsin has not recognized the social host/guest association as a special relationship. Therefore, although Ann had a duty to exercise ordinary care toward her guests, this duty did not include a duty to protect Zelco when he confronted Hitsman.[2]

---

[2] We note for purposes of clarity that this case is not governed by *Koback v. Crook*, 123 Wis. 2d 259, 366 N.W.2d 857 (1985). In *Koback*, an adult couple hosted a party and allegedly knowingly served alcohol to minors. *Id.* at 262, 366 N.W.2d at 860. Further, the adult couple allegedly knew that one minor was intoxicated and allegedly knew that this minor would be driving his motorcycle home with another guest riding along. *Id.* at 262, 366 N.W.2d at 858-59. The court held that when a social host negligently serves intoxicating beverages to a minor guest, and the intoxicants cause the minor's driving ability to be impaired, the host will be liable to third persons where the alcohol is a substantial factor in causing injury. *Id.* at 276, 366 N.W.2d at 865.

The instant case is distinguishable from *Koback* for several reasons. First, Ann did not "serve" alcohol; the party was a "bring your own beverages" party. Second, this case did not

## B. Failure to control of Kenneth and Bonnie Norenberg.

Hitsman claims that even if Ann does not have any legal duty, Bonnie and Kenneth Norenberg, as Ann's parents, were negligent in controlling their child and that this negligence is a separate, independent act of negligence that does not depend on Ann's actions. Bonnie and Kenneth claim that no legal duty exists that would make them responsible for injuries suffered by Zelco. The trial court found that no duty exists with respect to Bonnie and Kenneth, for the same reasons that no duty exists with respect to Ann. We conclude that, in these particular circumstances, no duty exists with respect to Ann's parents to protect guests from other guests and that Hitsman cannot state a claim for parental liability. Accordingly, we affirm the trial court.

---

involve drinking and driving. Third, Zelco, who was 22 years old, voluntarily and deliberately confronted Hitsman; Ann could not reasonably foresee that Zelco would confront Hitsman or that such a confrontation would result in a tumble down the staircase.

Moreover, *Koback* preceded the enactment of the statute granting civil liability immunity to those who provide alcoholic beverages to another person. The immunity statute, § 125.035, STATS., imposes liability on providers who serve alcohol only where alcohol is knowingly provided to underage persons and if the alcohol was a substantial factor in causing injury to a third party. *See* § 125.035(4)(b), STATS. This statute, however, does not provide a cause of action against a "provider" when the plaintiff's injuries stem in part from personal alcohol consumption. *See Kwiatkowski v. Capitol Indem. Corp.*, 157 Wis. 2d 768, 461 N.W.2d 150 (Ct. App. 1990).

The same analysis applied above with respect to Ann's duty to exercise ordinary care applies with respect to her parents. As noted, the duty to exercise ordinary care towards guests does not impose a duty to protect one guest from an assault by another guest, absent a special relationship. Just as there is no special relationship between Ann and Zelco, there is no special relationship between Ann's parents and Zelco. Consequently, Ann's parents did not owe a duty to protect Zelco when he chose to confront Hitsman.

We now address the parental control issue. Hitsman claims that Bonnie is negligent for leaving Ann home alone because Bonnie knew Ann had previous problems with underage drinking. Hitsman's argument is based on the common law parental liability that "where the parent fails to exercise control over the child, although the parent knows, or should know, that injury to another is a probable consequence," *Bankert v. Threshermen's Mutual Insurance Co.*, 110 Wis. 2d 469, 474, 329 N.W.2d 150, 152 (1983), a parent is liable for the resulting injuries.

We reject Hitsman's argument because a parent who has failed to exercise proper control only becomes liable if the child commits a negligent act. *See id.* at 477, 329 N.W.2d at 153-54. In the absence of negligence by the child, the parents' failure to exercise proper control is not actionable. *Id.* Consequently, because Ann did not commit an act of negligence, Hitsman cannot maintain a cause of action for parental liability against Bonnie or Kenneth.[3]

---

[3] The dissent, in broad and sweeping language, erroneously concludes that because of this decision "parents will believe they can look the other way while their teenage children host drinking parties." Dissent op. at 82. It is the duty of this court to

*By the Court.*—Order affirmed.

SCHUDSON, J. (*dissenting*). The majority decision interrupts the evolution of common law liability principles, and increases the risk that parents will believe they can look the other way while their teenage children host drinking parties. Based on the summary judgment submissions, I conclude that negligence in this case is an issue for the jury.

In *Antoniewicz v. Reszcynski*, 70 Wis. 2d 836, 236 N.W.2d 1 (1975), the supreme court held that "[t]he highest duty is owed to the invitee, that of ordinary care under the circumstances." *Id.* at 843, 236 N.W.2d at 4. The supreme court acknowledged its departure from settled precedent but explained:

> It is the tradition of common-law courts to reflect the spirit of their times and discard legal rules when they serve to impede society rather than to advance it. This principle, which has always been the guide of the courts, was well stated by Chief Justice Winslow . . .:

---

decide only the issues raised by the parties involved. *See State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514, 520 (Ct. App. 1989) (cases should be decided on the narrowest possible grounds). Based on the undisputed facts and circumstances in this particular case, we hold that the trial court's grant of summary judgment must be affirmed. Contrary to the dissent's implication, this opinion does not condone underage drinking nor does this opinion suggest that a parent or teenager can never be negligent when they host a party.

Nevertheless, based on the current state of the law when applied to the facts in this particular case, we conclude that summary judgment in favor of the Norenbergs was the appropriate disposition.

> ". . . the conditions and problems surrounding the people, as well as their ideals, are constantly changing. The political or philosophical aphorism of one generation is doubted by the next, and entirely discarded by the third. The race moves forward constantly, and no Canute[1] can stay its progress."

*Id.* at 855, 236 N.W.2d at 10-11 (citations omitted). Thus, the supreme court abolished the long-standing special immunities that had protected property owners from liability for injuries suffered by their guests. *Id.* at 856-857, 236 N.W.2d at 11.

Ten years later, the supreme court picked up on this very theme in *Koback v. Crook*, 123 Wis. 2d 259, 366 N.W.2d 857 (1985). Determining the potential liability for injuries suffered in a drunk driving crash resulting from a social host serving alcoholic beverages to the driver who was a minor, *Koback* traced the common law evolution leading to liability for vendors of alcoholic beverages. *Koback*, 123 Wis. 2d at 263-264, 366 N.W.2d at 859. In *Koback*, the supreme court emphasized that, in *Sorensen v. Jarvis*, 119 Wis. 2d 627, 350 N.W.2d 108 (1984), it had "abrogated the common law non-liability rule in respect to vendors of alcoholic beverages and held that the vendor may be liable to a third party for negligently furnishing alcohol to a minor when the alcohol so supplied is a substantial factor in causing injuries to a third party." *Id.* at 264, 366 N.W.2d at 859. Notably, the court explained that it "did so by expressly rejecting the outdated common-law notion that it was only the consumption of the alcoholic

---

[1] "Legendary Danish king who commands the sea to halt as proof of his power. Possible personification of the sun." 1 DICTIONARY OF MYTHOLOGY, FOLKLORE AND SYMBOLS 287 (1962).

beverages and not the negligent furnishing of them that was the cause of the injury." *Id.*

Although the supreme court in *Koback* discussed these common law principles at length, it ultimately decided the case in part, based on the statute prohibiting the serving of intoxicants to minors. Although three justices concurred, because, as they stated, the case was "grounded upon a violation of the statute," they also stated that it may be "that an entirely different question, with very different problems of public policy, is involved in the issue of the liability of a social host to an adult." *Koback*, 123 Wis. 2d at 277, 366 N.W.2d at 866 (Bablitch, J., concurring). Thus, given that the instant case reaches potentially "different problems of public policy" covered not by statute, but by common law, certification of this case to the supreme court could have been appropriate. Given, however, that the majority has decided the issue as a matter of law and, in doing so, has failed to consider the important public policy considerations that underlie the evolution of the expanding common law liability in this area, I would emphasize where that evolution logically leads.

The majority offers an analysis of *Koback* that is confused and confusing. Distinguishing *Koback*, the majority points out that "Ann did not 'serve' alcohol; the party was a 'bring your own beverages' party." Majority op. at 79 n. 2. Indeed! Why should that automatically allow her or her parents to escape liability? According to the summary judgment submissions, approximately thirty guests attended; many brought their own beer; the beer was "pooled" and refrigerated along with beer Ann had purchased; and the guests then could draw from the common pool. Are these circumstances distinguishable from those in *Koback*? Yes, but if the distinction has any significance at all, it

is to render the circumstances of the instant case more dangerous. After all, a social host providing and serving alcohol *may* be able to retain *some* control over who drinks and how much alcohol the guests consume. A "bring your own beverages" party, however, with open consumption from a common pool, does not allow the social host to exert even that minimal control.

Equally perplexing, the majority distinguishes *Koback* by pointing out that, in *Koback*, an adult served alcohol to a child. Here, by contrast, Ann was seventeen; Hitsman and Zelco were adults. So? One would hardly feel more at ease when the social host's duty to exercise ordinary care resides not with an adult, but rather, with a juvenile who has a history of arrests for underage drinking and who opens her home for a drinking party. An adult/child line of demarcation makes utterly no sense under these circumstances. Indeed, our society has said as much by drawing legal lines differently; in Wisconsin adulthood arrives at age eighteen, but legal drinking waits until age twenty-one.

The majority concedes that "Ann had a duty to exercise ordinary care toward the individuals who came into her home with her consent[.]" Majority op. at 78. The majority points out, nevertheless, that "this duty does not *necessarily* include a duty to protect one guest who voluntary confronts another guest." *Id.* (emphasis added). Of course, this is so, but at the summary judgment stage it is premature to determine whether the facts *necessarily* establish that Ann or Ann's parents "exercise[d] ordinary care."

The circumstances of this case may have been every bit as dangerous, and perhaps more dangerous than those presented in *Koback*. According to the summary judgment submissions, Ann's parents were

aware of their daughter's underage drinking arrests and possible alcohol problem. According to Ann's deposition, her parents went out of town leaving her alone with no specific rules regarding drinking in the house, and only the instruction, "don't wreck nothing." Thus, we have parents allegedly providing the home in which an unsupervised *minor* hosts a party with free access to an alcoholic beverage pool.

I am not denying that Zelco and Hitsman may prove to be responsible for what occurred. I am not prepared to say, however, that a teenage social host and his or her parents can *never* be liable for injuries suffered in the dangerous atmosphere created, at least in part, by their alleged negligence. The majority decision denies the potential for any liability of Ann or her parents, *regardless* of the facts that might come forward at a trial.

In *Koback*, the supreme court stated: "What is negligence in most cases presents a jury question. In liquor cases that involve minors the statute supplies the standard of what is negligence, the selling or furnishing of alcoholic beverages—*although there may be other acts of negligence that could also lead to liability*." *Koback*, 123 Wis. 2d at 268, 366 N.W.2d at 861 (emphasis added). This case, I believe, presents substantial allegations of "other acts of negligence that could also lead to liability."

The majority also suggests that liability is precluded by § 125.035, STATS. *See* majority op. at 80 n. 2. The statute, however, is inapplicable (and, indeed, if it were applicable the balance of the majority's decision would have been unnecessary). Section 125.035, in pertinent part, states:

(2) A person is immune from civil liability *arising out of* the act of procuring alcohol beverages

for or selling, *dispensing or giving away* alcohol beverages to another person.

. . . .

(4)(a)   In this subsection, "provider" means a person, including a licensee or permittee, who procures alcohol beverages for or sells, *dispenses or gives away* alcohol beverages to an underage person in violation of s. 125.07(1)(a).

(b)   [The immunity in s]ubsection (2) does not apply if the provider knew or should have known that the underage person was under the legal drinking age and if the alcohol beverages provided to the underage person were a substantial factor in causing injury to a 3rd party. In determining whether a provider knew or should have known that the underage person was under the legal drinking age, all relevant circumstances surrounding the procuring, selling, dispensing or giving away of the alcohol beverages may be considered . . . .

(Emphasis added.)

Here, the claim is not that the injury *arose out of* any conduct addressed by the statute. Rather, the plaintiff's claim is that Ann and her parents negligently provided and allowed for the party setting where injury occurred. Although the involvement of alcohol in this case may have been significant, that does not bring Zelco's claims within the statute. As we explained, § 125.035, STATS., "represents a modification to the common law as previously announced by the supreme court in *Sorensen* and *Koback*. Statutes in derogation of the common law are to be strictly construed." *Kwiatkowski v. Capitol Indem. Corp.*, 157 Wis. 2d 768, 776, 461 N.W.2d 150, 153 (Ct. App. 1990).

However, even if this case were to be analyzed under the immunity statute, a jury question would still exist and, therefore, the trial court's grant of summary

judgment still would have to be reversed. Here, in addition to the other negligence questions that I believe are properly reserved for the jury, the following questions under the statute still would remain for the jury's determination: (1) was Ann, by allowing the consumption of alcohol even under "BYOB" circumstances, a "provider" under the statute?; (2) did Ann know or should she have known that Hitsman was an underage drinker?; (3) did the alcohol beverages prove to be a substantial factor in causing injury to Zelco?[2]

Do we really want to announce a rule of common law that tells parents and their teenagers that they can *never* be liable for injuries suffered by guests who confront each other at a drinking party—regardless of whether the drinking party came about because of the negligence of the parents and teenager? I think not. The evolution of expanding common law liability, grounded in sound public policy, would logically allow the potential for liability of both the minor social host

---

[2] The majority's reliance on *Kwiatkowski v. Capitol Indemnity Corp.*, 157 Wis. 2d 768, 461 N.W.2d 150 (Ct. App. 1990), to distinguish the application of the immunity statute in the case before us is also erroneous. In *Kwiatkowski*, we held that the immunity statute prohibited a minor who became intoxicated, and then was injured after he operated a motor vehicle, from recovering against the "provider" for the minor's own injuries. We construed the statute as allowing a cause of action only as to an injured third party, and rejected the minor's argument that so long as a third party happened to be injured in the accident, the minor would also have a cause of action. Thus, *Kwiatkowski* does not establish what the majority suggests is an unqualified proposition of law that where the injured third-party/plaintiff has consumed some unspecified quantity of alcohol, there can still be no cause of action against the "provider" where a minor is alleged to have been a substantial factor in causing the third-party/plaintiff's injuries.

and his or her parents. Accordingly, I respectfully dissent.